**State v. York**
**Case No. CA89-06-044**
**Clermont County (12th)**
**Decided February 12, 1990**
[Cite as 1 AOA 447]

*Donald W. White, Clermont County Prosecutor, Timothy E. Schneider, 123 North Third Street, Batavia, Ohio 45103, for plaintiff-appellant.*

*R. Daniel Hannon, Clermont County Public Defender, Gary Rosenhoffer, 10 South Third Street, Batavia, Ohio 45103, for defendant-appellee.*

YOUNG, J.

This is an appeal by the state from an entry dismissing the indictment against defendant-appellee, Paul D. York, for failure to comply with the speedy trial provisions of R.C. 2963.30, the Interstate Agreement on Detainers ("I.A.D."). The facts pertinent to the disposition of this appeal are outlined in the following chronology:

February 18, 1988 Appellee is indicted by the Clermont County, Ohio Grand Jury for aggravated burglary. A warrant is issued listing appellee's address as "Mason County Jail, Kentucky."

July 8, 1988 Appellee sends a letter to the Clermont County Clerk of Courts requesting information as to what [he] must do to have said detainer disposed of." The clerk forwards the letter to Judge Schaeffer of the county court, who in turn forwards it to the Clermont County Prosecutor.

November 1, 1988 Clermont County Prosecutor files an I.A.D. Article IV request for temporary custody of appellee with Kentucky prison officials.

January 4, 1989 Appellee completes I.A.D. Form V-A and formally requests disposition under I.A.D. Article III.

March 23, 1989 Appellee is transported to Clermont County, Ohio and served with the indictment.

May 16, 1989 Appellee files motion to dismiss based on statutory and constitutional speedy trial provisions.

May 24, 1989 Appellee files supplemental motion to dismiss based on I.A.D.

June 2, 1989 Trial court grants appellee's motion to dismiss on basis of I.A.D.

The state's sole assignment of error concerns the applicability of the speedy trial provisions of Articles III and IV of the I.A.D.[1] Article III provides a procedure whereby a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. This section states:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate of the appropriate prosecuting official and court

by registered or certified mail, return receipt requested.

"***"

Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another state can secure the prisoner's presence in his jurisdiction for disposition of the outstanding charges. Specifically, Article IV provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance of with Article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated [.] ***

"(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. ***

"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"***"

In the court below, appellee asserted that his July 8, 1988 letter to the Clermont County Clerk of Courts constituted an Article III request and thereby activated the one hundred eighty day speedy trial period. The state, on the other hand, argued that the limitation period did not begin until appellee made formal a request for disposition under Article III on January 4, 1989. The trial court rejected both

arguments and ruled that the case was controlled by Article IV. The court then dismissed the charges based upon the state's failure to bring appellee to trial within one hundred twenty days of the state's request for temporary custody on November 1, 1988.

In determining whether the trial court properly dismissed the charges against appellee, we look first to appellee's letter of July 8, 1988. Appellee concedes that the letter does not literally comply with the mandates of Articles III. Appellee argues, however, that the letter substantially complies with the requirements and purposes of Article III and should be deemed to have activated Article III's one hundred eighty day speedy trial period. We disagree.

Article IX of the I.A.D. mandates a liberal construction of the agreement.[2] Thus, substantial compliance with the terms of the agreement by the defendant is sufficient to invoke its protections. *State* v. *Ferguson* (1987), 41 Ohio App. 3d 306. A review of the record *sub judice*, however, shows that appellee's letter of July 8, 1988 was not in substantial compliance with the terms of Article III.

In *Ferguson, supra,* the Franklin County Court of Appeals held that a defendant substantially complies with the I.A.D. requirements "by doing everything that could reasonably be expected." *Id.* at 311. See also, *Norton* v. *Parke* (Dec. 22, 1989), C.A.6, No. 88-6361, slip opinion. The court found that the defendant had satisfied Article III's request requirement by completing a request form and forwarding it to prison officials so they could prepare the necessary certificate of inmate status. According to the court, the burden then switched to the prison officials to mail the request, along with the certificate of inmate status, to the proper Ohio prosecutor and court. *Id.*

In the case at bar, appellee's letter of July 8, 1988 was directed to the clerk of courts, but not to the prosecutor or prison officials as required by Article III (a) and (b). Although the letter eventually reached the prosecutor, no notice of the alleged request was given to prison officials.

Thus, the alleged request was not accompanied by a certificate of inmate status. Notice to the prison officials and the certificate of inmate status are indispensable and essential to effectuate the purposes of the I.A.D. *Norton, supra.* As the court stated in *Ward* v. *State* (Ind. App. 1982), 435 N.E.2d 578, 580:

"Keeping in mind the dual function of the IAD to afford a procedure for obtaining custody of defendants confined in other states and to protect the defendants' constitutional right to a speedy trial, *** we do not find these procedural requirements to be merely technicalities. In fact, they serve an important function. Since local prosecuting officials make important decisions based on the information required to be forwarded to the official and the court, that information needs validation which a direct letter from a defendant does not present. This furthers the IAD's purpose to afford prosecutors custody of defendants incarcerated out of state.

"Second, and more importantly, the custodial official needs notice of any request for a final determination since a detainer becomes void if the defendant is not tried within 180 days after an appropriate request is made. [Article V(c).] This is for the defendant's benefit as it protects his right to a speedy trial. Additionally, the detainer system often works a harshness in that a prisoner with other criminal charges pending against him may find the duration of his existing imprisonment increased or that he thereby faces harsher conditions of confinement. *Smith* v. *Hooey* (1969), 89 S.Ct. 575 [*sic*], 393 U.S. 374, 89 S.Ct. 575, 21 L.E.2d 607. Notice to the custodial official is important so that these negative effects are as limited as possible. Therefore, even when the statute is liberally construed so as to effectuate its purposes, we find that the procedural method outlined is essential, ***."

See also, *Steelman* v. *State* (Ind. 1985), 486 N.E.2d 523; *State* v. *Reitz* (1984), 26 Ohio App. 3d 1; *People* v. *Collins* (1980), 85 Ill. App. 3d 1056, 407 N.E.2d 871.

Accordingly, the trial court properly ruled that the speedy trial period of Article III did not commence with appellee's letter of July 8, 1988.

The trial court held that the applicable speedy trial provision was that of Article IV and that it commenced with the state's request for temporary custody on November 1, 1988. As noted above, Article IV provides a one hundred twenty day speedy trial period. This period does not commence, however, until the arrival of the prisoner in the receiving state. In the case at bar, appellee did not arrive in Clermont County until March 23, 1989. Therefore, if Article IV governed the proceedings below, the state would have one hundred twenty days from March 23, 1989, not November 1, 1988, within which to bring appellee to trial. Therefore even assuming that Article IV was applicable, the trial court's dismissal of the charges on June 2, 1989 was premature. We find however, that Article IV was not applicable to the instant proceedings.

Article IV affords the prisoner certain procedural and substantive rights. See *United States* v. *Mauro* (1978), 436 U.S. 340, 98 S.Ct. 1834. These rights may be waived, however, where the prisoner makes an affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV. *Yellen* v. *Cooper* (C.A.10, 1987), 828 F.2d 1471, 1474; *United States* v. *Eaddy* (C.A.6, 1979), 595 F.2d 341, 344. In the present case, appellee completed an I.A.D. Form V-A on January 4, 1989 and expressly requested disposition under Article III. Accompanying this form was a formal Article III request for disposition, which was duly forwarded to the prison officials who then provided a certificate of inmate status and sent the materials to the prosecutor and the court. Such affirmative action on the part of appellee clearly constituted a waiver of any rights he may have had as the result of the state's Article IV request on November 1, 1988. *Yellen, supra*; *Eaddy, supra*. Accordingly, we hold that the state had one hundred eighty days from January 4, 1989, apart from any necessary or reasonable continuances, within which to bring appellee to trial. As the trial court's dismissal was within this time frame, we find the state's assignment of error to be well-taken.

HENDRICKSON, Concurs.
JONES, P.J., Dissents.

JONES, P.J., dissenting:
Since appellee's July 8, 1988 letter directed to the clerk of courts substantially complied with the provisions of Article III of the Interstate Agreement on Detainers ("I.A.D." or "Agreement"), the trial court's dismissal entry should be affirmed.

The I.A.D., codified in R.C. 2963.30, is a compact among forty-eight states, the District of Columbia, and the United States establishing procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial. *Cuyler* v. *Adams* (1981,

449 U.S. 433, at 435, 101 S.Ct. 703, at 705, fn. 1. The I.A.D. establishes two procedures under which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving state. *Id.* Article III of the Agreement provides the prisoner-initiated procedure while Article IV provides the procedure by which the prosecutor in the receiving state may initiate the transfer. *Id.* When the prisoner initiates an Article III proceeding, he shall be brought to trial within one hundred eighty days after "having cause to be delivered to the prosecuting officer" written notice of his request. See *State* v. *Reitz* (1984), 26 Ohio App. 3d 1. The prisoner's request shall be accompanied by a certificate from the appropriate prison official having custody of the prisoner stating information relating to the prisoner stating information relating to the prisoner's prison term. *Id.*

The majority concludes that appellee's July 8 letter was insufficient to invoke the Agreement since no notice of the alleged request was given to prison officials and appellee's request was not accompanied by a certificate of inmate status. I believe such substantially complied with the requirements of Article III notwithstanding the lack of a companion certificate from prison officials.

The I.A.D. should be liberally construed to effectuate its purposes of encouraging the expeditions and orderly disposition of outstanding charges, determining the proper status of detainers, and establishing cooperative and uniform procedures for the attainment of these goals. *Schofs* v. *Warden, FCI, Lexington* (E.D. Ky. 1981), 509 F. Supp. 78, 82. In *Schofs*, the court held that an inmate's letters to the clerk and state's attorney requesting a final disposition of charges against him satisfied the Article III requirements. There was no indication in *Schofs* that the prisoner's request was accompanied by the requisite certificate from prison officials. The court nevertheless held that the I.A.D.'s requirements were satisfied although the terms of the Agreement had not been literally met. Such reflects the general position taken by federal courts which have adopted the philosophy that technical compliance is unnecessary if, through no fault of his own, an inmate fails to meet all Article III requirements. See *Nash* v. *Carchman* (N.J. 1983), 558 F. Supp. 641, affirmed *Nash* v. *Jeffes* (C.A.3 1984), 739 F. 2d 878, reversed on other grounds *Carchman* v. *Nash* (1985), 473 U.S. 716, 105 S.Ct. 3401.

Appellee's letter, although addressed to the clerk of courts, was delivered to the Clermont County Prosecutor's Office. The letter clearly reflects appellee's request for "information as to what I must do to have said detainer disposed of." While not using the I.A.D. standard forms, appellee requested the necessary information for an Article III action but, through no fault of his own, was denied the requested information. The prosecutor's office simply ignored appellee's letter and, over three months later, initiated its own request under Article IV. Having recognized appellee's substantial compliance, this was an obvious attempt by the prosecutor to toll the one hundred eighty day period triggered by appellee's Article III action and "rewind" the clock by filing his own Article IV action. I believe such is impermissible and is directly in conflict with the statement in Article IX that the Agreement be liberally construed so as to effectuate its purposes. *Cuyler, supra,* at 448, 101 S.Ct. at 712.

For these reasons, I would hold that appellee's July 8 letter substantially complied with the requirements of Article III and that the trial court correctly granted appellee's motion to dismiss. I accordingly dissent.

---

[1] The state's assignment of error reads:
"THE COURT ERRED IN DISMISSING THE INDICTMENT IN THE INSTANT ACTION AND IN FINDING THAT APPELLEE'S SPEEDY TRIAL RIGHTS UNDER ARTICLE III OF THE INTERSTATE AGREEMENT ON DETAINERS WERE VIOLATED."

[2] Article IX provides that the agreement "shall be liberally construed so as to effectuate its purposes," which according to Article I, include "the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, information or complaints." R.C. 2963.30.