DECISION.
{¶ 1} Defendant-appellant Abraham Denkins appeals his convictions for forcible rape of a minor and gross sexual imposition ("GSI"). The trial court sentenced Denkins to life imprisonment for the rape and to five years' imprisonment for the GSI and ordered that the sentences be served concurrently. We affirm.
 {¶ 2} On appeal, Denkins assigns four errors: (1) the trial court erred when it denied his motions to dismiss for failure to meet the time limitations of the Interstate Agreement on Detainers ("IAD"); (2) Denkins was denied the effective assistance of counsel because his trial counsel failed to research and understand the terms of the IAD; (3) the trial court erred when it permitted the state to amend the indictment; and (4) the trial court erred when it denied Denkins's motions for acquittal, and the convictions were contrary to the manifest weight of the evidence.
 I. Justice Delayed {¶ 3} Denkins was indicted on two counts of forcible rape of a minor in May 2001. He received news of his indictment while in federal prison in Kentucky for unrelated charges. Denkins sent a letter on August 21, 2001, to the warden of the federal prison, asking for a final disposition of the Ohio charges. This notice was then forwarded to the Hamilton County Prosecuting Attorney. The clerk of courts filed a notice on August 30, 2001, that he had received Denkins's request.
 {¶ 4} Denkins's case was an exercise in confusion and delay. Two months after Denkins first requested a final disposition, his case actually came before the trial court. There, Denkins's first appointed counsel asked for a continuance to discuss the case with Denkins. Over the following year and a half, Denkins repeatedly filed pro se motions to "withdraw" his counsel. He sometimes withdrew his motions to withdraw counsel, only to later re-file them. By the time Denkins went to trial, he was on his third court-appointed attorney. Despite having counsel throughout the pretrial proceedings, Denkins filed numerous, repetitive pro se motions to dismiss; the trial court denied them all.
 {¶ 5} The trial court continued the case 22 times for various reasons. Denkins now complains that all of these delays pushed his trial date beyond the time limits imposed by the IAD. He is correct that the delays did push his trial date beyond the IAD time limits. But because Denkins waived his IAD speedy-trial rights, and because Denkins was the cause of the delays, we affirm his conviction.
 II. Interstate Agreement on Detainers {¶ 6} The IAD was enacted to ease the difficulties in securing a speedy trial for persons already incarcerated in other jurisdictions, to reduce untried indictments, and to eliminate uncertainties concerning prisoner treatment and rehabilitation.[1] Ohio has adopted the IAD in R.C.2963.30. Kentucky is also a party to the IAD. Because the IAD is a Congressionally sanctioned interstate compact, federal law controls.[2]
 {¶ 7} We must note that the time provisions in the IAD operate independently of Ohio's speedy-trial statute.[3]
The state's speedy-trial statute is triggered by a defendant's arrest,[4] while the filing of a detainer triggers the IAD.[5] The IAD, not Ohio's speedy-trial statute, controls in this case because Denkins was imprisoned in another state, and because this case involved the filing of a detainer.[6]
 {¶ 8} Under Article III(a) of the IAD, a defendant must be brought to trial within 180 days after he has notified the court and the prosecuting attorney of his request for final disposition.[7] A court may also grant reasonable or necessary continuances under certain circumstances.[8] The 180-day period begins to run when a prisoner's request for final disposition is actually delivered to the court and the prosecuting officer.[9] Ohio received Denkins's request on August 30, 2001. Had nothing else happened, Denkins's trial should have started no later than February 26, 2002.
 {¶ 9} But a defendant may waive the IAD statutory time.[10] A defendant waives his IAD speedy trial rights when he or his attorney agrees to a trial date beyond the statutory period.[11] (Contrast this with Ohio's speedy-trial right, where a defendant's waiver of a speedy trial must be either written or made on the record in open court.)[12] And agreement by counsel generally controls scheduling matters.[13] Denkins's trial counsel agreed to the first trial date, which was outside the 180-day statutory limit, and then agreed to all of the subsequently proposed trial dates but one.
 {¶ 10} The only trial date that Denkins's counsel did not agree to was a continuance from the end of December 2002 to the middle of March 2003. But Denkins's counsel only objected to the length of the continuance. Citing his need for extra time to take care of some discovery matters, Denkins's counsel agreed to a trial date of February 24, 2003. But this date conflicted with the prosecutor's and the trial court's schedule. The court instead chose March 17, 2003, because a new trial judge was taking over the docket on March 10, and the new judge would not be able to place the trial on the docket during the first week. The trial court had a discussion on the record with the prosecutor, and they settled upon March 17 as the earliest date available after February 24. Because this discussion was held in open court, with Denkins's trial counsel present, and because it appeared to be both reasonable and necessary, this continuance was granted for good cause.
 {¶ 11} Denkins's trial counsel objected to the length of the delay, but counsel needed more time to prepare the case, and counsel signed the entry of continuance. It does not matter whether trial counsel proposed the waiver or simply agreed to it — the 180-day IAD period was waived either way.[14] Because Denkins's trial counsel agreed to the trial dates beyond the IAD limits, Denkins waived his IAD speedy-trial rights.
 {¶ 12} Further, Article III(c) of the IAD allows a trial court to grant any "necessary or reasonable" continuance, provided that good cause is shown in open court and the defendant or his counsel is present.[15] The language of the IAD indicates that the continuance exception is directed primarily, if not exclusively, to the state's request for a continuance to which a defendant objects.[16] A defendant should not be penalized for a continuance granted over his objection.[17]
But here the trial court granted most of the continuances because of Denkins's motions. Several others were to locate new counsel for Denkins and to give new counsel time to prepare. Denkins was the cause of these delays. He cannot now argue that these continuances were unnecessary or unreasonable.
 {¶ 13} The only continuance not at Denkins's request was granted due to a scheduling conflict in early August 2002. A congested court calendar does not automatically provide good cause for delay under the IAD.[18] The record does not indicate why Denkins's trial could not go forward in early August, when the trial court granted a three-week extension over Denkins's objection. This delay did not toll the 180 days. But, again, Denkins had already waived his IAD speedy-trial rights when his trial counsel, on at least two prior occasions, had agreed to trial dates outside of the statutory limit.
 {¶ 14} While Denkins was not brought to trial within the statutory time limits of the IAD, he had waived his IAD speedy-trial rights when his counsel agreed to the later trial dates. And nearly all of the delays in his case were directly attributable to various defense motions, so they tolled Denkins's IAD time.[19] We do not believe that a defendant should be able to request dozens of continuances and then claim a "gotcha" because his trial cannot go forward on the exact date he prefers.
 {¶ 15} We therefore overrule Denkins's first assignment of error.
 III. The Continuances {¶ 16} Even if we counted against the state the delays that Denkins had objected to, the number of those days attributable to the prosecution or the court was fewer than 180. There were 83 days from when the state had received the request for final disposition to Denkins's first appearance in court, when his trial counsel asked for a continuance. The August 2002 continuance entered over Denkins's objection accounted for 21 days. And the March 17, 2003, trial date was another 21 days after February 24, 2003 — the date on which Denkins's trial counsel had wanted to hold the trial. That equaled only 125 days attributable to the state's delays. Denkins caused all of the other delays, and the time for the trial was tolled during those continuances.
 IV. Ineffective Assistance {¶ 17} In his second assignment, Denkins argues that he was denied the effective assistance of counsel because his court-appointed trial counsel failed to research the terms of the IAD and to move for dismissal on those grounds. His argument is without merit.
 {¶ 18} To establish ineffective assistance, the defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the substandard performance actually prejudiced the defendant.[20] There is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.[21]
 {¶ 19} The record shows that Denkins had three different court-appointed attorneys over the course of his case. He now claims that none of them read or understood the IAD, and that they failed to (1) identify the relevant dates under the IAD; (2) realize that his pro se motions might not automatically toll the time for trial under the IAD; and (3) raise and argue the time limits as a reason for dismissal.
 {¶ 20} Denkins's pro se motions did toll the time for trial in this case. His argument concerning ineffective assistance and tolling is therefore without merit.
 {¶ 21} While Denkins's trial counsel waived the IAD statutory time, the record shows that counsel needed additional time to obtain further discovery from the prosecution and from an investigator. We cannot say that continuing a complex case for further investigation amounts to ineffective assistance of counsel.
 {¶ 22} Denkins's first appointed trial counsel moved for dismissal because the time under the IAD had expired. And Denkins made numerous pro se motions for dismissal for the same reason. The trial court denied them all. We cannot say that it was error for his later-appointed trial counsel not to file motions for dismissal, citing grounds that the court had repeatedly rejected. Further, as we have already discussed, Denkins waived his time under the IAD, so those motions would have been frivolous.
 {¶ 23} We therefore overrule Denkins's second assignment of error.
 V. The Amended Indictment {¶ 24} In his third assignment, Denkins argues that the trial court should not have allowed the state to amend the indictment after Denkins had filed his notice of alibi. Denkins is wrong.
 {¶ 25} The original indictment, bill of particulars, and amended bill of particulars alleged that the offenses had occurred in September 2000 and in the fall of 2000 or the winter of 2001. Denkins filed a notice of alibi in March 2002, stating that he had been in federal custody at the times alleged in the indictment. The state then amended the indictment to include dates a year earlier than those in the original indictment.
 {¶ 26} Denkins now argues that amending the indictment denied him a fair trial. But a court may amend an indictment at any time before, during, or after a trial to correct a defect, imperfection, or omission in form or substance, or to account for any variance in the evidence, as long as there is no change in the name or identity of the crime charged.[22]
 {¶ 27} The state argued that it had determined the dates of the offenses based on a misinformed guess. While there were indications that the older victim had originally said that the offenses had happened in 1999, the prosecutor and other investigating individuals placed the dates in 2000 because they believed that Denkins had not been arrested on his federal charges until the winter or spring of 2001. When Denkins informed them that he had been in federal custody at the original time alleged in the indictment, the trial court allowed the prosecution to amend the indictment to substitute reasonable dates. This was not error.
 {¶ 28} A similar situation occurred in State v.Charley.[23] The defendant — charged with the rape of a minor — filed a notice of alibi, and the state amended the indictment to change the dates. As here, the reason for the uncertainty concerning the dates was the child's inability to recall specific dates. The Ninth Appellate District held that the indictment had properly informed the defendant of the nature and identity of the charged offenses, and that he had not been prejudiced by a change in the dates.[24]
 {¶ 29} In this case, more than a year passed between the amendment of the indictment and the beginning of Denkins's trial. Denkins had more than enough time to prepare an adequate defense, or even to file an additional notice of alibi, to defend against the changes in the dates stated in the amended indictment. The amendment did not deny Denkins any of his due-process rights or prejudice him in any way.
 {¶ 30} We therefore overrule his third assignment of error.
 VI. Weight and Sufficiency of the Evidence {¶ 31} In his fourth and final assignment, Denkins argues that his convictions were contrary to the manifest weight of the evidence, and that the court should have granted his motion for acquittal. His argument is without merit.
 {¶ 32} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[25] The court must weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact lost its way and created a manifest miscarriage of justice in finding the defendant guilty. A new trial should be granted on the weight of the evidence only in exceptional cases.[26]
And "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[27]
 {¶ 33} We will uphold a court's decision to deny a motion for acquittal if, when viewing the evidence in the light most favorable to the state, we conclude that any rational trier of fact could have found that the essential elements of the offenses had been proved beyond a reasonable doubt.[28]
 {¶ 34} The jury found Denkins guilty of rape and GSI. To support his conviction for rape as charged in the indictment, the jury had to find that Denkins had engaged in sexual conduct with a person who was less than 13 years old and not his spouse, and that Denkins had inserted, however slightly, any part of his body into the victim's vaginal or anal cavity.[29] To support his conviction for GSI as charged in the indictment, the jury had to find that Denkins had engaged in sexual conduct with a person who was less than 13 years old and not his spouse, and had touched an "erogenous zone" of the victim — i.e., her thigh, genitals, buttocks, pubic region, or breasts.[30]
 {¶ 35} There was no forensic evidence presented; the state's case rested entirely on the testimony of each victim. Denkins argued at trial, and argues now, that the inconsistencies in the victims' testimony were sufficient to undermine the state's case. The record shows that each victim was under 13 years old at the time of the crimes, and that neither was Denkins's spouse. Each victim testified that Denkins had engaged in sexual conduct with her. The older victim explained clearly that Denkins had inserted his finger into her "private part." And, after a competency determination, the younger victim explained that Denkins had touched her "private."
 {¶ 36} Denkins points to numerous instances in which the victims' stories had changed over the course of the investigation. He points to discrepancies about what each girl had been wearing, who had been in the house at the time, and where the events had occurred, and he also cites the victims' inability to recall the exact dates of the offenses.
 {¶ 37} Having weighed the evidence and considered the credibility of the witnesses, we cannot say that the jury lost its way in finding Denkins guilty. The trial court therefore properly denied Denkins's motion for acquittal, because reasonable minds could have found the elements of the crimes proved beyond a reasonable doubt.
 {¶ 38} We therefore overrule Denkins's fourth assignment of error.
 {¶ 39} Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Winkler, P.J., and Hildebrandt, J., concur.
[1] R.C. 2963.30.
[2] New York v. Hill (2000), 528 U.S. 110, 120 S.Ct. 659.
[3] R.C. 2945.71.
[4] Id.
[5] R.C. 2963.30.
[6] See, also, State v. Ward (Sept. 25, 2000), 12th Dist. No. CA99-12-114.
[7] R.C. 2963.30.
[8] Id.
[9] Fex v. Michigan (1993), 507 U.S. 43, 113 S.Ct. 1085;State v. Ward, 10th Dist. No. 02AP-56, 2002-Ohio-4852.
[10] New York v. Hill (2000), 528 U.S. 110, 120 S.Ct. 659.
[11] Id.
[12] State v. King, 70 Ohio St.3d 158, 1994-Ohio-412,637 N.E.2d 903.
[13] New York v. Hill (2000), 528 U.S. 110, 120 S.Ct. 659.
[14] Id.
[15] R.C. 2963.30.
[16] State v. Moreland (Apr. 17, 2002), 9th Dist. No. 01CA007883, citing New York v. Hill (2000), 528 U.S. 110,120 S.Ct. 659.
[17] State v. Ward, 10th Dist. No. 02AP-56, 2002-Ohio-4852.
[18] Id.
[19] See United States v. Scheer (C.A. 2, 1984),729 F.2d 164.
[20] Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[21] Id.
[22] Crim.R. 7(D).
[23] 9th Dist. No. 01CA007813, 2002-Ohio-1962.
[24] Id.
[25] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[26] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[27] Section 3(B)(3), Article IV, Ohio Constitution.
[28] State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372,683 N.E.2d 1096.
[29] R.C. 2907.02(A)(1)(b) and 2907.01(A).
[30] R.C. 2907.05(A)(4) and 2907.01(B).