The STATE of Ohio, Appellee,

v.

ANDERSON, Appellant.

[Cite as *State v. Anderson*, 189 Ohio App.3d 697, 2010-Ohio-5068.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2010–03–019.

Decided Oct. 18, 2010.

Donald W. White, Clermont County Prosecuting Attorney, and David H. Hoffmann, Assistant Prosecuting Attorney, for appellee.

R. Daniel Hannon, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

HENDRICKSON, Judge.

{¶ 1} Defendant-appellant, William E. Anderson, appeals a decision of the Clermont County Court of Common Pleas denying his motion to dismiss a grand-theft charge. For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2} The following facts were stipulated by the parties. On February 14, 2007, a Clermont County grand jury returned an indictment charging appellant with one count of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(3), a fourth-degree felony. At the time of the indictment, appellant was incarcerated in the United States Penitentiary, McCreary, a federal prison located in Kentucky. The same day the indictment was filed, the trial court issued a praecipe

for a warrant on indictment and a warrant to arrest appellant. Both the praecipe and the warrant accurately listed the McCreary prison as appellant's address. For some reason, a holder was not teletyped to the McCreary prison, nor was a detainer lodged against appellant at that time. On February 15, 2007, the day following the indictment, Clermont County authorities entered the warrant into Ohio's Law Enforcement Automated Data System ("LEADS").

{¶ 3} Appellant was transferred several times to federal prisons in Louisiana, Oklahoma, and Texas. Eventually, appellant became eligible to serve the final portion of his federal sentence in a halfway house. This eligibility was cancelled, however, when a LEADS check revealed the outstanding Clermont County warrant. On February 6, 2009, appellant received notice of the pending Clermont County grand-theft charge for the first time.

{¶ 4} Subsequently, appellant sent a document entitled "demand for speedy trial or speedy disposition of warrant(s), detainers or demand in the alternative to dismiss the case" to the clerk of courts at the Clermont County Court of Common Pleas. In the document, which was filed by the clerk on February 13, 2009, appellant argued that the outstanding Clermont County charge adversely affected his conditions of incarceration in Texas and that his speedy-trial rights had been violated.

{¶ 5} On February 19, 2009, Clermont County authorities officially lodged a detainer against appellant. Had the detainer been promptly lodged, the pending Clermont County charge could have been resolved before appellant became eligible for the federal halfway house.

{¶ 6} On February 23, 2009, the Clermont County clerk of courts received appellant's demand for disposition or dismissal of his case pursuant to the Interstate Agreement on Detainers ("IAD"). Appellant completed his federal prison sentence on June 30, 2009. Although the record does not disclose the precise date, appellant was subsequently taken into custody by the Clermont County Sheriff's Department.

{¶ 7} Appellant filed another motion to dismiss on August 28, 2009. In this motion, appellant argued that the state violated the IAD on two fronts: (1) by failing to bring him to trial within 180 days of his request for disposition of the case and (2) by unreasonably delaying his opportunity to request disposition of the case. Following a hearing, the trial court denied the motion. Appellant pleaded no contest to one count of grand theft of a motor vehicle and was sentenced to two years of community control. This appeal followed.

Assignment of Error No. 1

{¶ 8} "The trial court erred in denying appellant's motion to dismiss * * *."

{¶ 9} Appellant challenges the trial court's denial of his motion to dismiss, arguing that the state violated its duty to lodge a detainer against him within a reasonable time when the state knew his whereabouts. This affirmative duty, appellant insists, is implicit in the IAD and imposition of it accords with the overriding purposes of the IAD.

{¶ 10} Ohio is one of 48 states that is a signatory to the IAD along with the United States and the District of Columbia. *New York v. Hill* (2000), 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560. Codified at R.C. 2963.30, the purpose of the act is to facilitate the speedy disposition of charges pending against an individual who is incarcerated in another state. R.C. 2963.30, Art. I. Because the IAD is " 'a congressionally sanctioned interstate compact' within the Compact Clause of the United States Constitution," interpretation of the act involves a question of federal law. *Hill* at 111, 120 S.Ct. 659, 145 L.Ed.2d 560, quoting *Carchman v. Nash* (1985), 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516. See also *State v. Ward* (Sept. 25, 2000), Clermont App. No. CA99–12–114, 2000 WL 1370993, at *1.

{¶ 11} The IAD sets forth a procedure by which a prisoner may demand the speedy disposition of charges pending against him in another member jurisdiction. R.C. 2963.30, Art. III. The act also establishes a procedure by which a member state may initiate the transfer of a prisoner incarcerated in another member jurisdiction in order to bring that individual to trial in the requesting jurisdiction. R.C. 2963.30, Art. IV. In either case, the provisions of the IAD are triggered only when a detainer is filed with the institution currently holding the prisoner. *United States v. Mauro* (1978), 436 U.S. 340, 343, 98 S.Ct. 1834, 56 L.Ed.2d 329. A "detainer" is "a request filed by a criminal-justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *State v. Sanchez,* 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 19, quoting *Carchman,* 473 U.S. at 719, 105 S.Ct. 3401, 87 L.Ed.2d 516.

{¶ 12} The IAD imposes certain time restrictions upon the state that operate independently from Ohio's speedy-trial statutes. *Ward* at *3–4; *State v. Denkins,* Hamilton App. No. C–030518, 2004-Ohio-1696, 2004 WL 690408, ¶ 7. Article III provides that once a detainer is filed, the warden of the institution holding the prisoner must promptly inform him of the detainer and his right to request final disposition of the charges. If the prisoner makes such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days of receiving the request. *Fex v. Michigan* (1993), 507 U.S. 43, 49–52, 113 S.Ct. 1085, 122 L.Ed.2d 406.

{¶ 13} In overruling appellant's motion to dismiss, the trial court determined that the IAD's 180–day speedy-trial clock was not triggered because appellant did not substantially comply with the IAD's procedural requirements. See *State v. York* (1990), 66 Ohio App.3d 149, 153, 583 N.E.2d 1046. Rather than notifying the warden of the prison in which he was incarcerated, appellant sent his request for final disposition directly to the clerk of courts at the Clermont County Court of Common Pleas. This prevented the warden of the prison from forwarding appellant's request to the clerk of courts along with a certificate containing the requisite inmate status information. See id. at 153–154, 583 N.E.2d 1046.

{¶ 14} The trial court also refused to grant dismissal on the basis that appellant was unreasonably delayed in having the opportunity to request final disposition of his case. The court found that the IAD was inapplicable to the case before the detainer was filed on February 19, 2009. Until a detainer was lodged and the proper procedures were followed, the IAD's 180–day speedy-trial clock was not triggered.

{¶ 15} We review a trial court's decision interpreting the IAD de novo. *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6; *State v. Jeffers* (June 20, 1997), Gallia App. No. 96 CA 13, 1997 WL 346158, at *1. In view of appellant's arguments on appeal, the central issue in this case is whether the IAD can be read to impose a duty on the state to lodge a detainer against an incarcerated individual within a reasonable timeframe when the prisoner's whereabouts are known to the state. The parties concede that this is an issue of first impression in Ohio.

{¶ 16} According to appellant, the state was able to circumvent the IAD and deny him the opportunity to speedily dispose of the grand-theft charge before he became eligible for the federal halfway house. In order to proscribe this alleged malfeasance, appellant urges us to interpret the IAD to impose an implicit duty on the state to file a detainer within a reasonable time when the location of an incarcerated individual is known.

{¶ 17} In support of his position, appellant cites a decision issued by the Washington Supreme Court. In *State v. Welker* (2006), 157 Wash.2d 557, 141 P.3d 8, the Washington high court construed the IAD alongside Washington's speedy-trial statute. Id. at 564–565, 141 P.3d 8. The court found it fundamentally fair to require the prosecutor to act in good faith and due diligence in bringing a defendant to trial in the state of Washington. Id. at 565, 141 P.3d 8. The court concluded that once a prosecutor had actual knowledge of an incarcerated defendant's location in a sister state, the prosecutor was obligated to exercise good faith and due diligence in filing a detainer against the individual. Id. at 566, 141 P.3d 8.

{¶ 18} Before imposing this implicit duty, the *Welker* court acknowledged that "under the IAD there is no statutory duty of good faith and due diligence imposed on prosecutors to bring a defendant to trial." Id. at 564, 141 P.3d 8. We agree with this observation and find that the absence of this duty in the text of the IAD compels us to reach a conclusion distinct from that reached by the *Welker* court.

{¶ 19} It is logical to infer that public policy advocates in favor of timely notification when an indictment, information, or complaint is returned against an individual incarcerated in another state. However, the plain language of the IAD does not impose such a duty. As this court has previously observed, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, the statute is to be applied as written." *State v. Mackey* (Feb. 14, 2000), Warren App. No. CA99–06–065, 2000 WL 190033, at *4. The act does not contain any provisions setting a deadline for the state to file a detainer. Nor does the act delineate any sanctions to be administered when the state negligently delays in filing a detainer. In fact, the IAD itself does not actually require the state to file a detainer at all. *Fex,* 507 U.S. at 51, 113 S.Ct. 1085, 122 L.Ed.2d 406, fn. 4.

{¶ 20} What the plain language of the IAD *does* impose is a necessary prerequisite for the application of the act. Both federal and state courts, including this one, have acknowledged that the provisions of the IAD are not triggered until a detainer is lodged against the accused. *Mauro,* 436 U.S. at 343, 98 S.Ct. 1834, 56 L.Ed.2d 329; *State v. Schnitzler* (Oct. 19, 1998), Clermont App. No. CA98–01–008, 1998 WL 729250, at *3. Quite simply, the IAD has no applicability until a detainer comes into being.

{¶ 21} The record discloses no justification for the state's negligence in lodging a detainer against appellant two years after his indictment in Clermont County. As the parties stipulated, this omission prevented the resolution of the Clermont County charge before appellant became eligible for the federal halfway house. While the public-policy considerations relied upon by the Washington Supreme Court in *Welker* may be logical, we must apply the plain language of the IAD. Any reforms to the legislation must be undertaken on the floor of the General Assembly or Congress, not in our courtroom. See *Fex,* 507 U.S. at 44, 113 S.Ct. 1085, 122 L.Ed.2d 406 (addressing when the time clock begins to run once final disposition is requested and determining that the defendant's "fairness" and "higher purpose" arguments were "more appropriately addressed to the legislatures of the contracting States, which adopted the IAD").

{¶ 22} Imposing a duty upon the state that is not contained in the text of the IAD exceeds the bounds of judicial interpretation and crosses into the territory of legislation. We therefore reject appellant's argument and decline to impose an

implied obligation on the state to file a detainer upon a defendant within a certain time period. Accordingly, appellant is not entitled to dismissal of the grand-theft charge on the basis that the state violated the IAD.

{¶ 23} Appellant's sole assignment of error is overruled.

Judgment affirmed.

POWELL, P.J., and RINGLAND, J., concur.