OPINION *Page 2 
{¶ 1} Defendant-appellant Douglas Centafanti appeals his conviction on one count of Grand Theft of a Motor Vehicle, a felony of the fourth degree in violation of R.C. 2913.02(A) (1), one count of Vandalism, a felony of the fifth degree in violation of R.C. 2909.05(B) and one count of Attempt to Commit Breaking and Entering, a misdemeanor of the first degree in violation of R.C. 2911.13(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The case at bar was decided upon the parties stipulation to the following facts and Joint Exhibits in the trial court.
 {¶ 3} Mount Union College filed charges against defendant on July, 25, 2005, in the Alliance Municipal Court. The Court found probable cause, assigned two case numbers to the charges and issued a warrant for defendant's arrest in each case. Joint Exhibits 1, 2, and 3.
 {¶ 4} In Alliance Municipal Court Case, No. 2005-CRA-00858, appellant was charged with one count of Grand Theft of a Motor Vehicle, a fourth degree felony. Joint Exhibit 4.
 {¶ 5} In Alliance Municipal Court Case No. 2005-CRB-00859, appellant was charged with Attempted Breaking and Entering, a first degree misdemeanor, and Obstructing Official Business, a second degree misdemeanor. Joint Exhibits 5 and 6 respectively. Copies of the dockets in each case are attached as Joint Exhibits 7 and 8 respectively. *Page 3 
 {¶ 6} On September 13, 2005, in Case No. 2005-CRA-00858, the Alliance Municipal Court filed a judgment entry indicating that appellant was unavailable for prosecution. A copy of the judgment entry is attached as Joint Exhibit No. 9.
 {¶ 7} On February 13, 2006, James A. Jenkins, an attorney from Cleveland, Ohio, wrote letters on appellant's behalf. The letters explained that appellant was in federal custody, on a six month term, for parole violations. The letters listed appellant's federal case number and the institution. The letters also indicated that appellant was available for prosecution. Copies of the letters were filed in the Alliance Municipal Court and are attached as Joint Exhibit 10 and 11.
 {¶ 8} Joint Exhibits 10 and 11 were sent to and received by the Alliance Municipal Clerk of Court Criminal Division.
 {¶ 9} Joint Exhibit 11 is a letter that contains the same body as Joint Exhibit 10 but was addressed to the Clerk of Courts Criminal Division, Stark County Common Pleas Court. This letter was received by the Alliance Municipal Court Clerk of Courts.
 {¶ 10} James Jenkins does not have certified mailing cards to verify that the letters were received by the addressee or the copied recipients.
 {¶ 11} Joint Exhibits 10 and 11 each contain a notation that copies of the letters were sent to the Stark County Prosecutor's Office, but the county prosecutor's office has no record of receiving these letters.
 {¶ 12} Joint Exhibits 10 and 11 do not indicate that they were sent to the warden or superintendent having custody of defendant. *Page 4 
 {¶ 13} Neither Joint Exhibit 10 or 11, nor any other correspondence from appellant or his counsel, were accompanied by a certificate, letter, or other notification from a state or federal prison warden regarding appellant's incarceration.
 {¶ 14} Neither a state or federal prison warden independently provided any representative from the State of Ohio with a certificate, letter, or other notification, indicating that appellant was incarcerated.
 {¶ 15} On February 14, 2006, the Alliance Municipal Clerk filed Exhibits 10 and 11 in both Alliance Municipal Court Case No. 2005-CRA-00858 and Alliance Municipal Court Case No. 2005CRB-00859.
 {¶ 16} On February 15, 2006, the Alliance Municipal Clerk filed duplicates of Exhibits 10 and 11 in both Alliance Municipal Court Case No. 2005-CRA-00858 and Alliance Municipal Court Case No. 2005-CRB-00859.
 {¶ 17} On March 28, 2006, in Case No. 2005-CRB-00859, the Alliance Municipal Court filed a judgment entry indicating that appellant was unavailable for prosecution. A copy of the judgment entry is attached as Joint Exhibit No. 12.
 {¶ 18} Appellant was arrested on August 25, 2006. The arrest occurred after appellant had served his federal prison time.
 {¶ 19} A preliminary hearing was held in the Alliance Municipal Court on August 30, 2006, and the municipal Court bound over appellant's cases to the Stark County Grand Jury.
 {¶ 20} The Stark County Grand Jury returned an indictment against appellant on October 10, 2006, which charged appellant with one count of Grand Theft of a Motor Vehicle (fourth degree felony), R.C. § 2913.02(A) (1), one count of Vandalism (fifth *Page 5 
degree felony 5), R.C. § 2909.05(B) (1) (a), and one count of Attempt to Commit Breaking and Entering (first degree misdemeanor), R.C. §§2911.13(A) and 2923.02(A).
 {¶ 21} On November 15, 2006, a Motion to Dismiss was filed in the Stark County Common Pleas Court on behalf of appellant for failure to bring him to trial within 180 days of the date of receipt of his availability for final adjudication, pursuant to R.C. 2941 01. A Memorandum in Support of the Motion was filed on December 20, 2006 as well as the State's Response to the Motion. The trial court denied the Motion by Judgment Entry on December 22, 2006. On January 10, 2007, appellant entered a plea of No Contest to the charges contained in the Indictment, was found guilty by the Court and sentenced to a total term of incarceration in a state penal institution of nine (9) months.
 {¶ 22} A stay of execution was granted by the trial court in this matter.
 {¶ 23} Appellant now appeals, assigning as error:
 {¶ 24} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT DOUGLAS CENTAFANTI'S MOTION TO DISMISS FOR FAILURE TO BRING THE MATTER TO TRIAL WITHIN 180 DAYS OF THE DATE HE CAUSED NOTICE OF HIS AVAILABILITY TO BE SERVED UPON THE COURT, THE PROSECUTING ATTORNEY AND THE CLERK OF COURT. (Exh. * * *)."
 I. {¶ 25} In the sole assignment of error, appellant argues the trial court erred in denying his motion to dismiss the indictment based upon a violation of his right to a speedy trial. We agree.
 {¶ 26} Specifically, appellant maintains his right to a speedy trial was violated by the State's failure to bring him to trial within 180 days of the date he caused notice of *Page 6 
availability pursuant to R.C. 2941.401 to be served upon the court and the prosecuting attorney.
 {¶ 27} "We begin by noting our lengthy history of Sixth Amendment jurisprudence, including the application of R.C. 2945.71. The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by theFourteenth Amendment. Section 10, Article I of the Ohio Constitution guarantees an accused this same right. State v. MacDonald (1976),48 Ohio St.2d 66, 68, 2 O.O.3d 219, 220, 357 N.E.2d 40, 42. Although the United States Supreme Court declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. Barker v. Wingo (1972), 407 U.S. 514, 523, 92 S.Ct. 2182,2188, 33 L.Ed.2d 101, 113.'" State v. Parker, 113 Ohio St.3d 207,2007-Ohio-1534 at ¶ 11. [Quoting State v. Hughes (1999),86 Ohio St.3d 424, 425, 715 N.E.2d 540.].
 {¶ 28} In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the state to bring a defendant who has not waived his rights to a speedy trial to trial within the time specified by the particular statute. R.C. 2945.71 et seq. applies to defendants generally. R.C. 2941.401 applies to defendants who are imprisoned within the State of Ohio. State v. Smith, 140 Ohio App.3d 81,85-86, 2000-Ohio-1777, 746 N.E.2d 678, 682.
 {¶ 29} As Chief Justice Moyer wrote in Brecksville v. Cook (1996),75 Ohio St.3d 53, 55-56, 661 N.E.2d 706: *Page 7 
 {¶ 30} "Ohio's speedy trial statute was implemented to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and in Section 10, Article I of the Ohio Constitution. State v. Broughton (1991),62 Ohio St.3d 253, 256, 581 N.E.2d 541, 544; see Columbus v. Bonner (1981),2 Ohio App.3d 34, 36, 2 OBR 37, 39, 440 N.E.2d 606, 608. The constitutional guarantee of a speedy trial was originally considered necessary to prevent oppressive pretrial incarceration, to minimize the anxiety of the accused, and to limit the possibility that the defense will be impaired. State ex rel. Jones v. Cuyahoga Cty. Ct. of CommonPleas (1978), 55 Ohio St.2d 130, 131, 9 O.O.3d 108, 109, 378 N.E.2d 471,472.
 {¶ 31} "Section 10, Article I of the Ohio Constitution guarantees to the party accused in any court `a speedy public trial by an impartial jury.' Throughout the long history of litigation involving application of the speedy trial statutes, this court has repeatedly announced that the trial courts are to strictly enforce the legislative mandates evident in these statutes. This court's announced position of strict enforcement has been grounded in the conclusion that the speedy trial statutes implement the constitutional guarantee of a public speedy trial.' (Citations omitted.) State v. Pachay (1980), 64 Ohio St.2d 218,221, 18 O.O.3d 427, 429, 416 N.E.2d 589, 591.
 {¶ 32} "We have long held that the statutory speedy-trial limitations are mandatory and that the state must strictly comply with them.Hughes, 86 Ohio St.3d at 427, 715 N.E.2d 540. Further, `the fundamental right to a speedy trial cannot be sacrificed for judicial economy or presumed legislative goals.' Id." State v. Parker, supra 2007-Ohio-1534
at ¶ 12-15. *Page 8 
 {¶ 33} R.C. 2941.401 governs the speedy trial rights of an imprisoned defendant, and it reads, in pertinent part,
 {¶ 34} "When a person has entered upon a term of imprisonment in a correctional institution of this state, and * * * there is pending in this state any untried indictment * * * against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court * * * written notice of the place of his imprisonment and a request for a final disposition to be made of the matter * * * The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.
 {¶ 35} "The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.
* *
 {¶ 36} "If the action is not brought to trial within the time provided * * * no court any longer has jurisdiction thereof, the indictment * * * is void, and the court shall enter an order dismissing the action with prejudice."
 {¶ 37} The Ohio Supreme Court has held that, pursuant to R.C.2941.401, the initial duty is placed on the defendant to notify the prosecutor and the court of his place *Page 9 
of incarceration and to request final disposition of outstanding charges. State v. Hairston, 101 Ohio St.3d 308, 804 N.E.2d 471,2004-Ohio-969. "In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term." Id. at 311, 804 N.E.2d 471.
 {¶ 38} "An inmate's `notification of availability and request for final disposition' can take several forms, depending on the circumstances of the inmate. Inmates are sometimes in halfway houses or municipal jail facilities where a warden or superintendent may or may not be present as contemplated in R.C. 2941.401. At times, inmates take it upon themselves to notify the court and prosecutor directly, outside the prescribed method in R.C. 2941.401. See State v. Drowell (1991),61 Ohio Misc.2d 623, 581 N.E.2d 1183. Even where the prescribed method is used, variations in notification still occur. See State v. Fox (Oct. 22, 1992), Cuyahoga App. No. 63100 and State v. Fox (Dec. 17, 1998), Cuyahoga App. No. 74641." State v. Gill, 8th Dist. No. 82742, 2004-Ohio-1245 at ¶ 10. (Footnotes omitted).
 {¶ 39} In State v. Drowell (1991), 61 Ohio Misc.2d 623,581 N.E.2d 1183, the inmate, on his own, did actually serve both the prosecutor and the court, but the warden never forwarded the appropriate certificate. The court held: "* * * the failure of the warden of the institution having custody of defendant to forward the appropriate certificate when defendant filed the subject request is not grounds to deny said motion." Id. (concluding an official's failure to send the certificate of inmate status should not *Page 10 
vitiate an inmate's right to a speedy trial once requested, citingState v. Ferguson (1987), 41 Ohio App.3d 306, 311, 535 N.E.2d 708).
 {¶ 40} The Ferguson decision referenced the Supreme Court of Ohio ruling in Daugherty v. Solicitor for Highland Cty. (1971),25 Ohio St.2d 192, 267 N.E.2d 431, where the court held that a federal penitentiary inmate's letters to the appropriate Ohio prosecutor and judge requesting either a trial or dismissal of an Ohio charge, although informal, constituted a general request for a speedy trial. The court stated that "[w]here an inmate in a penal institution has made a diligent, good-faith effort to call to the attention of the proper authorities in another state that he desires a charge pending against him in that state disposed of, by trial or dismissal, he is entitled to have such request acted upon. The failure of the authorities to do so constitutes the denial of a speedy trial". Daugherty, 25 Ohio St.2d at 193,267 N.E.2d 431.
 {¶ 41} For appellant to have strictly followed the R.C. 2941.401
requirements, he should have given his written notice to the prison authorities, who should have forwarded it to the prosecutor and court along with a certificate of inmate status. However, it is clear that, although appellant did not strictly follow that path, the required information arrived at the proper place.
 {¶ 42} "While in general, the one hundred eighty day time requirement of R.C. 2941.401 does not begin to run until an inmate demands a speedy resolution of a pending charge, this is premised on the prosecutor exercising reasonable diligence in properly notifying the inmate concerning the indictment. The state cannot avoid the application of R.C. 2941.401 by neglecting to inform the custodial warden or superintendent of the source and content of an untried indictment. [State v. Carter (June *Page 11 
30, 1981), Franklin App. No. 80AP-434]. Equally, the state cannot rely upon the prisoner's failure to make demand for speedy disposition, but must count the time as having commenced upon the first triggering of the state's duty to give notice of the right to make demand for speedy disposition. Fitch, supra, at 162. If a prosecutor has not exercised reasonable diligence in notifying an inmate of pending charges, the proper remedy is a motion to dismiss for denial of a speedy trial. Id."State v. Rollins (Nov. 17, 1992), 10th Dist. No. 92 AP-273.
 {¶ 43} "We hold that appellant's actions substantially complied with the requirements set forth in R.C. 2941.401. See State v. Gill, Cuyahoga App. No. 82742, 2004-Ohio-1245 (holding that substantial compliance is the appropriate standard under R.C. 2941.401 "in those instances where documents actually reach a location, regardless if mailed by the inmate or institution * * * "). See, also, State v. Quinones, Cuyahoga App. No. 86959, 2006-Ohio-4096 (holding that substantial compliance is the proper standard under R.C. 2963.30, the interstate agreement on detainers, which is the speedy trial statute that applies to defendants in out-of-state prisons, including federal penitentiaries).
 {¶ 44} "Substantial compliance requires the defendant to do `everything that could be reasonably expected.' State v. Ferguson
(1987), 41 Ohio App.3d 306, 311, 535 N.E.2d 708. The key to determining when the 180-day period begins * * * is delivery upon the receiving state and its court. * * * What is important is there be documentary evidence of the date of delivery to the officials of the receiving state.' State v. Pierce, Cuyahoga App. No. 79376, 2002-Ohio-652. See, also, Daugherty v. Solicitor for Highland County (1971),25 Ohio St.2d 192, 193, 267 N.E.2d 431 (holding that *Page 12 
`[w]here an inmate in a penal institution has made a diligent, good-faith effort to call to the attention of the proper authorities in another state that he desires a charge pending against him in that state disposed of, by trial or dismissal, he is entitled to have such request acted upon. The failure of the authorities to do so constitutes the denial of a speedy trial.' (Relying on Smith v. Hooey (1969),393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.)" State v. Antos, 8th
Dist. No. 88091, 2007-Ohio-415 at ¶ 11-13.
 {¶ 45} The State cites and relies upon the Ohio Supreme Court decision in State v. Hairston (2004), 101 Ohio St.3d 308, 804 N.E.2d 471, in urging us to uphold the trial court's order denying appellant's motion to dismiss. The question on appeal in Hairston was whether R.C. 2941.401
places a duty of reasonable diligence on the state to discover the whereabouts of an incarcerated defendant against whom charges are pending.
 {¶ 46} In Hairston, the Franklin County Prosecuting Attorney charged Hairston by information with aggravated robbery, kidnapping and two counts of robbery. On October 6, 2000, the prosecutor dismissed those charges, anticipating a possible indictment. On October 18, 2000, the grand jury indicted Hairston on the same charges, and filed them on October 25, 2000.
 {¶ 47} Because of the charges in the information, Hairston's parole officer held an on-site parole revocation hearing and revoked his parole on October 24, 2000. A summons sent to Hairston's home, while he remained in the county jail, came back unserved. On October 31, 2000, Hairston was returned to the custody of the Ohio Department of Rehabilitation and Correction. *Page 13 
 {¶ 48} On June 12, 2001, the records supervisor at the Pickaway Correctional Institution delivered a detainer to Hairston advising him of the four charges from the October 2000 indictment.
 {¶ 49} The Supreme Court concluded Hairston never caused the requisite notice of imprisonment and request for final disposition to be delivered to either the prosecuting attorney or the court; therefore, he never triggered the process to cause him to be brought to trial within 180 days of his notice and request. The Court further concluded the facts revealed the warden did not have knowledge of any of the charges pending against him, and the statute does not require a duty of reasonable diligence for the State to discover the whereabouts of an incarcerated defendant against whom criminal charges are pending.
 {¶ 50} The Supreme Court held:
 {¶ 51} "In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term. It does not, however, allow a defendant to avoid prosecution simply because the state failed to locate him. The facts here demonstrate that Hairston knew of his arrest, knew he had been apprehended in the bar, and knew that the police had removed from his waistband the money taken from the blue bag during the robbery. He also knew that the prosecutor had charged him by information; despite this, he waited until June 2001 to seek to enforce R.C. 2941 .401."
 {¶ 52} Unlike Hairston, in the case sub judice, there is clear evidence the State knew the location where appellant was incarcerated. In the instant case, appellant sent *Page 14 
a letter to the appropriate prosecutor's office and court, notifying them of his location of imprisonment and demanding a final disposition. The record reflects that the court took no action on this letter. Appellant's notification was filed by the clerk of courts in both Alliance Municipal Court Case No. 2005-CRA-00858 and Alliance Municipal Court Case No. 2005-CRB-00859 on February 15, 2006. The next activity that occurred on the case was on March 28, 2006 in Case No. 2005-CRB-00859 where the Alliance Municipal Court, without explanation, filed a Judgment Entry indicating that the appellant was unavailable for prosecution. There is nothing in the record evidencing whether the Alliance City Prosecutor received a copy of appellant's letter; however appellant submitted the affidavit of his attorney wherein he noted that certified copies of the notice were sent to both the Alliance Municipal Court and the Alliance City prosecutor's office. Although appellant's attorney was unable to locate the return receipts for said letters the record contains no evidence to refute receipt by the court and the Alliance City prosecutor's office. All the State needed to do was communicate with the warden of the institution where appellant was incarcerated to obtain the appropriate certificate. In the alternative, the State could have contacted the attorney who filed the notice on appellant's behalf who could then have forwarded any necessary information to the court. Finally, the State could have notified the warden or superintendent having custody of the prisoner of the pending charge. The warden or superintendent is, in turn, required to inform the prisoner in writing of the pending charge and his right to make a request for final disposition thereof. Appellant could then have requested the appropriate certificate be forwarded the prosecutor. The State cannot avoid the application of R.C. 2941.401 by neglecting to inform the custodial warden or *Page 15 
superintendent of the source and content of an untried indictment when the State is aware of the defendant's location and the source and content of the untried indictment and the defendant has made a demand for speedy disposition of the same. State v. Rollins, supra.
 {¶ 53} Accordingly, we find that appellant substantially complied with R.C. 2941.401, and that the court erred by denying his motion to dismiss the charges against him. We emphasis that this is not a case where a defendant simply made a blanket demand; rather appellant was represented by counsel who filed a specific request in the appropriate court where the untried indictment was pending.
 {¶ 54} Appellant's sole assignment of error is sustained, and this case is reversed and final judgment is entered for appellant.
 Gwin, P.J., Farmer, J., and Delaney, J., concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed and final judgment is entered for appellant. Costs to appellee. *Page 1