[Cite as *State v. Moore*, 2014-Ohio-4879.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  14-14-06

      v.

HEZEKIAH M. MOORE,             O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  14-14-07

      v.

HEZEKIAH M. MOORE,             O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  14-14-08

      v.

HEZEKIAH M. MOORE,             O P I N I O N

      DEFENDANT-APPELLANT.

Case Nos, 14-14-06, 07, 08, 11, 12

**STATE OF OHIO,**

      **PLAINTIFF-APPELLEE,**          **CASE NO. 14-14-11**

      **v.**

**HEZEKIAH M. MOORE,**          **O P I N I O N**

      **DEFENDANT-APPELLANT.**

**STATE OF OHIO,**

      **PLAINTIFF-APPELLEE,**          **CASE NO. 14-14-12**

      **v.**

**HEZEKIAH M. MOORE,**          **O P I N I O N**

      **DEFENDANT-APPELLANT.**

**Appeals from Marysville Municipal Court**
**Trial Court Nos. CRB1200323, TRC1202111B, TRC1201397A,**
**CRB1200324 and CRB1200206**

**Judgments Reversed**

**Date of Decision:   November 3, 2014**

**APPEARANCES:**

    *Alison Boggs*  **for Appellant**

    *John M. Eufiner*  **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} In this consolidated action, Defendant-appellant Hezekiah Moore ("Moore") appeals the judgments of the Marysville Municipal Court of Union County, Ohio, overruling his motions for speedy trial and finding him guilty of multiple charges, as listed below, upon his entry of no contest pleas in five separate cases, labelled as CRB 1200323 (App. # 06), TRC 1202111 (App. # 07), TRC 1201397 (App. # 08), CRB 1200324 (App. # 11), and CRB 1200206 (App. # 12).  For the reasons that follow, we reverse the trial court's judgments.

{¶2} The procedural facts relevant to this opinion indicate that on March 15, 2012, Moore was charged with multiple traffic offenses, including OVI (operation of a vehicle under the influence), speeding, operation without a license, and a lane violation, in Union County case number TRC 1201397 (App. # 08).  On the same date, Moore was charged with failure to comply with an order of a police officer (fleeing and eluding), in case number CRB 1200206 (App. # 12).  On March 21, Moore filed a plea of not guilty and he was released on a personal recognizance bond.  A jury trial for these two cases was scheduled for May 25, 2012.

{¶3} On April 20, 2012, Moore was charged with another OVI, as well as operation with a suspended license, operation without a license, and noncompliance with suspension, in case number TRC 1202111 (App. # 07).  On

the same day, Moore was charged with assault, a misdemeanor of the first degree, in violation of R.C. 2903.13(A), in case number CRB 1200323 (App. # 06).  He was further charged with the use or possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14, in case number CRB 1200324 (App. # 11).  He pled not guilty to all charges, and a jury trial for these three cases was scheduled for July 13, 2012.

**{¶4}** It appears that the scheduled jury trials did not take place.  A filing in one of the five cases, TRC 1201397, indicates that on May 17, 2012, Moore failed to appear in court for a pretrial and the trial court issued a bench warrant for his arrest.  No other filings appear in the cases until January 2013.

**{¶5}** On January 23, 2013, Moore filed a motion for speedy trial pursuant to R.C. 2941.401, in each of the five cases relevant to this appeal.[1]  The motion indicated that Moore was at the time incarcerated "at Southeastern Correctional Institution located in Lancaster, OH 43130-9606."  (*See* R. in case CRB 1200323,[2] at 9.)  Moore requested a "hearing within the time frame" set out by the statute and asked the trial court to "grant the Defendant to [sic] a speedy trial."  (*Id.*)  The motion was filed by Moore pro se, although he had been previously represented by counsel, Perry Parsons, in all these cases.  The following documents were attached

---

[1] In their captions, Moore's motions included additional trial court cases, labeled as CRB 1200322, CRB 1200358, and TRD 1202112.  These additional cases are not included in the current appeal.

[2] The filings relevant to this appeal were the same in all five cases in the trial court.  Therefore, for simplicity of this opinion, we cite to one record, from case CRB 1200323.

to the motion: sworn affidavit of indigency, in which Moore attested that he was "incarcerated at the Southeastern Correctional Institution located in Lancaster Ohio"; certificate of service, indicating that the motion and the affidavit were sent to the office of the Union County Prosecutor by regular mail; and a printout of the "Offender Search" page from the Ohio Department of Rehabilitation and Correction website with Moore's information, indicating that he had been incarcerated there on unrelated charges since May 8, 2012. (*Id.*) The printout was not authenticated or notarized, but it listed Moore's name, number, date of birth, race, admission date, institution, status, offense information, stated prison term, and the expiration date for the stated term. (*Id.*)

{¶6} On March 27, 2013, the State filed a response in opposition to Moore's motion, requesting the trial court "to deny action" upon the motion, because it "failed to comport with the requirements of R.C. §2941.401." (R. at 10.) In particular, the State cited failure to attach "a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner," as required by R.C. 2941.401. (*Id.*)

**{¶7}** On May 22, 2013, the trial court issued a "finding and order." (R. at 11.) Although the State did not raise this issue, the trial court noted that Moore served his motions upon an improper party. "The Union County Prosecutor does not represent the State of Ohio in the cases cited by Defendant. Rather, the State of Ohio is represented by the Marysville Law Director's Office." (R. at 11.) Because the Marysville Law Director's Office responded to Moore's motion with objections, they were apparently provided with Moore's motions, in spite of the improper service by Moore. (*See* R. at 10.) The trial court gave Moore an opportunity to respond to the challenges that the State had raised to his motion, setting a deadline for the response of June 13, 2013. (R. at 11.) Moore did not file anything within the deadline, and no action was taken on the cases until February 27, 2014.

**{¶8}** On February 27, 2014, a notice of hearing was filed, indicating that all cases had been assigned for a hearing. (R. at 12.) The hearing took place on March 6, 2014. Moore was represented by his attorney Mr. Parsons, who started with an argument regarding the January 2013 motion for speedy trial. (Tr. of Proceedings ("Tr.") at 3, Mar. 6, 2014.) Through his counsel, Moore argued that he substantially complied with the requirements of R.C. 2941.401, and asked the trial court "to grant his motion and dismiss these [cases] for lack of being tried within 180 days." (*Id.* at 5:18-19.) Moore asserted that he "did what he was

required to do" and that he "can't be held liable for the warden not doing what they're required to do." (*Id.* at 5:9-15.) The State replied that there was no proof that Moore "had made any kind of written or verbal request to the warden" to attempt to comply with the statute and that the motion should be overruled for failure to substantially comply with the statute. (*Id.* at 6:18-20.)

{¶9} The trial court refused to dismiss the cases for violation of speedy trial rights, stating, "I don't think the statute was complied with even substantially in the case." (*Id.* at 7:1-4.) Following the trial court's decision, Moore entered pleas of no contest to each of the charges. (*Id.* at 8-14.) The trial court found him guilty of OVI in case TRC 1201397, fleeing and eluding in case CRB 1200206, assault in case CRB 1200323, driving under suspension in case TRC 1202111, and possession of drug paraphernalia in case CRB 1200324. The remaining charges have been dismissed. (*Id.*)

{¶10} Moore now appeals raising one assignment of error.

**APPELLANT'S SPEEDY TRIAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT OVERRULED HIS MOTION TO BRING HIS CASES TO TRIAL WITHIN 180 DAYS AFTER HE NOTIFIED THE COURT AND PROSECUTOR THAT HE WAS INCARCERATED.**

*Legal Framework for Review of this Case*

{¶11} "Appellate review of speedy-trial issues involves a mixed question of law and fact." *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876

N.E.2d 1007, ¶ 11 (3d Dist.); *accord State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 20. Therefore, we must give "due deference to the trial court's findings of fact if they are supported by competent, credible evidence." *Masters* at ¶ 11; *Hansen* at ¶ 20. But we conduct an independent review of "whether the trial court correctly applied the law to the facts of the case." *Id.*

{¶12} Moore's request for speedy trial was based on R.C. 2941.401, which allows an incarcerated defendant to request a speedy disposition of other charges pending against him in Ohio courts "in a timely manner." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 25. This statute provides, in relevant parts:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

> The written notice and request for final disposition shall be given or sent by the prisoner to the warden or superintendent having custody

of him, who shall promptly forward it with the certificate to the appropriate prosecuting attorney and court by registered or certified mail, return receipt requested.

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

* * *

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

R.C. 2941.401.

{¶13} We recognize that the language of R.C. 2941.401 is analogous to the language of Article III of the Interstate Agreement on Detainers ("IAD"), R.C. 2963.30.[3] *See Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶

---

[3] Article III of IAD states:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

23-24 (recognizing the same duty placed upon the incarcerated defendant by the two statutes); *State v. McDonald*, 7th Dist. Mahoning No. 97 C.A. 146, 1999 WL 476253, *3 (June 30, 1999) ("R.C. 2963.30 is analogous to R.C. 2941.401 in that the provisions therein mirror the language in the first paragraph of R.C. 2941.401."); *State v. Wells*, 110 Ohio App.3d 275, 280, 673 N.E.2d 1008 (10th Dist.1996).  Ohio courts have relied on case law analyzing Article III of IAD when resolving issues under R.C. 2941.401.  *See, e.g.*, *State v. Gill*, 8th Dist. Cuyahoga No. 82742, 2004-Ohio-1245, ¶ 18-20, 23 (citing *State v. Ferguson*, 41 Ohio App.3d 306, 535 N.E.2d 708 (10th Dist.1987), an interstate detainer case, when analyzing R.C. 2941.401); *McDonald* at *4, (resolving an issue of compliance with R.C. 2941.401 by referencing two IAD cases); *see also State v. Antos*, 8th Dist. Cuyahoga No. 88091, 2007-Ohio-415, ¶ 11-12 (resolving issues of

---

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

(d) * * * If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

* * *

R.C. 2963.30.

compliance with R.C. 2941.401 by citing other cases that dealt with "the speedy trial statute that applies to defendants in out-of-state prisons, including federal penitentiaries"). Acknowledging the similar nature of the statutes and almost identical operational language, we follow our sister districts and use the relevant reasoning from the cases that dealt with Article III of IAD as influential on the issue before us.[4]

*Requirement of Compliance with R.C. 2941.401*

{¶14} Moore's entire argument focuses on the question of whether the trial court properly denied his request for dismissal, which was based on the alleged violation by the State of the speedy trial statute, R.C. 2941.401. The State asserts that the decision was proper because Moore's request for speedy trial under the statute was not properly submitted and therefore, the State had no duty to act under R.C. 2941.401.

{¶15} The Ohio Supreme Court held that the initial duty under R.C. 2941.401 is upon the defendant and the defendant's initial compliance with the requirements of R.C. 2941.401 in requesting the speedy trial triggers the state's responsibility to bring him to trial within the 180-day period or to forego any prosecution. *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶

---

[4] But see *Wells*, 110 Ohio App.3d at 281, fn. 1 ("R.C. 2941.401 is merely a state statute, which Ohio courts have the ultimate authority to interpret. Because the IAD is a congressionally sanctioned interstate compact under the Compact Clause of Section 10, Article I of the United States Constitution, its interpretation presents a question of federal law.")

20. The question before us is therefore, whether Moore complied with R.C. 2941.401 when requesting the speedy trial, thus satisfying his burden. This is the only issue we are addressing in this opinion.[5]

{¶16} We note the apparently mandatory nature of R.C. 2941.401, listing a number of procedures that "shall" be followed under its express language. *See also* R.C. 2963.30. In spite of this mandatory language, however, Ohio courts analyzing both R.C. 2941.401 and R.C. 2963.30 (IAD), have consistently held that only substantial compliance with the statutes by the inmate is required in order to trigger the running of the 180-day time limitation. The Ohio Supreme Court held that "[t]he one-hundred-eighty-day time period set forth in R.C. 2963.30, Ohio's codification of the Interstate Agreement on Detainers, begins to run when a prisoner *substantially complies* with the requirements of the statute set forth in Article III(a) and (b) thereof." (Emphasis added.) *State v. Mourey*, 64 Ohio St.3d 482, 597 N.E.2d 101 (1992), paragraph one of the syllabus. Ohio appellate courts followed this reasoning in IAD and R.C. 2941.401 cases. *See, e.g.*, *State v. Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, ¶ 43-44, *remanded sub nom. State v. Centafanti*, 120 Ohio St.3d 275, 2008-Ohio-6102, 898 N.E.2d 45 (holding that substantial compliance is required to satisfy R.C. 2941.401); *State v. Quinones*, 168 Ohio App.3d 425, 2006-Ohio-4096, 860 N.E.2d

---

[5] Moore does not assert that he was denied his speedy trial rights in any manner other than through the violation of R.C. 2941.401.

793 (8th Dist.), ¶ 17 (analyzing IAD); *Gill,* 8th Dist. Cuyahoga No. 82742, 2004-Ohio-1245, at ¶ 24 (holding that substantial compliance is the appropriate standard under R.C. 2941.401 "in those instances where documents actually reach a location"); *McDonald*, 7th Dist. Mahoning No. 97 C.A. 146, 1999 WL 476253 ("Substantial compliance is all that is required of a defendant under R.C. 2941.401."); *State v. York*, 66 Ohio App.3d 149, 153, 583 N.E.2d 1046 (12th Dist.1990) (requiring substantial compliance with IAD).

{¶17} The standard for substantial rather than strict compliance with the statute might be justified by the nature of the right that the statute protects, i.e., the right to a speedy trial. The Ohio Supreme Court recognized that " '[t]he right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. Section 10, Article I of the Ohio Constitution guarantees an accused this same right.' " *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 11, quoting *State v. Hughes*, 86 Ohio St.3d 424, 425, 715 N.E.2d 540 (1999). That is why the Ohio Supreme Court has "repeatedly announced that the trial courts are to strictly enforce the legislative mandates [of the speedy trial statutes]" and construe them against the state. *State v. Pachay*, 64 Ohio St.2d 218, 221, 416 N.E.2d 589 (1980); *see also Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *Hughes*, 86 Ohio St.3d at 427; *Masters*, 172 Ohio App.3d

666, 2007-Ohio-4229, 876 N.E.2d 1007, citing *State v. Singer*, 50 Ohio St.2d 103, 109, 362 N.E.2d 1216, ¶ 9 (1977). We must thus apply this construction, against the state and in favor of the criminal defendant, to the statute at issue. *See McDonald*, 7th Dist. Mahoning No. 97 C.A. 146, 1999 WL 476253, *5 (June 30, 1999) ("By its very nature, a speedy trial statute, such as R.C. 2941.401, must be strictly construed against the State.").

{¶18} Review of Ohio cases indicates that substantial compliance with R.C. 2941.401 requires that the inmate does "everything reasonably required of him that [is] within his control." *See, e.g.*, *Mourey*, 64 Ohio St.3d at 487, 597 N.E.2d 101; *accord Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, ¶ 44, citing *Ferguson*, 41 Ohio App.3d at 311, 535 N.E.2d 708.

{¶19} Analyzing what is reasonably required of an incarcerated criminal defendant under the statute, the Ohio Supreme Court held:

> A careful review of Article III(a) of R.C. 2963.30 reveals that the prisoner "*shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *." (Emphasis added.) The other requirements listed in Article III(a) are the responsibility of the officials having custody of the prisoner.
>
> Article III(b) of the agreement then requires that the written notice of the prisoner " * * * shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him * * *." The remainder of subsection (b) provides the other responsibilities of the officials having custody of the prisoner.

(Emphasis sic.) *Mourey*, 64 Ohio St.3d at 487, 597 N.E.2d 101, quoting R.C. 2963.30. The above quote indicates that the Ohio Supreme Court recognized two requirements of the statute: delivery of the notice and the request for speedy trial to the prosecuting officer and the court, and service of the notice on the prison official having custody of the prisoner.

{¶20} In *Mourey*, the Ohio Supreme Court was asked to determine when the 180-day time period begins to run. *Id.* at 485. The court found that the defendant substantially complied with the statute and that therefore, the time began to run when the defendant " 'caused to be delivered' his IAD request form to the California prison officials." *Id.* This was found to substantially satisfy the statute, even though the appropriate prosecutor and the court had not been notified of the request yet.[6] *Id.* at 484. Therefore, in spite of the fact that the Ohio Supreme Court recognized two procedures required under the statute, it found substantial compliance upon satisfaction of one of the procedures only. It appears that the Ohio Supreme Court justified this low standard for inmate's compliance with the statute by reasoning that the prisoner should not be held "accountable for measures and duties that are totally beyond his or her control." *Id.* at 487.

---

[6] Three justices disagreed with this decision and would require notification to the prosecuting attorney and the court, with the additional information, as mandated by R.C. 2963.30, Article III(a). *Mourey* at 489 (Resnick, J., Moyer, C.J., and Holmes, J., dissenting).

{¶21} The *Mourey* holding that mere delivery of the request to the prison officials satisfies the statute was soon effectively overruled by the United States Supreme Court in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). Reviewing a Michigan IAD case, the United States Supreme Court held that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer." *Id.* at 52; *see State v. Ward*, 10th Dist. Franklin No. 02AP-56, 2002-Ohio-4852, ¶¶ 48-49 (recognizing that the *Fex* holding "effectively overruled that portion of *Mourey"*). Yet, the *Mourey* reasoning and the substantial compliance standard continue to be governing law in Ohio.

{¶22} Other cases in Ohio confirm this low standard for substantial compliance with R.C. 2941.401 by the inmate. Thus, the courts have found that where the prosecuting attorney and the appropriate court are notified of the inmate's request for speedy trial, but the notification to the prison official is missing, the statute is satisfied and the state must act. For example, in *Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, the inmate sent letters "*to the appropriate prosecutor's office and court*, notifying them of his location of imprisonment and demanding a final disposition." (Emphasis added.) *Id.* at ¶ 52.

Reversing the trial court's denial of the inmate's motion to dismiss for speedy trial violations due to noncompliance with the statute, the court of appeals noted that

> [f]or appellant to have strictly followed the R.C. 2941.401 requirements, he should have given his written notice to the prison authorities, who should have forwarded it to the prosecutor and court along with a certificate of inmate status. However, it is clear that, although appellant did not strictly follow that path, the required information arrived at the proper place.

*Id.* at ¶ 41. The court further noted that upon receipt of the inmate's request for speedy trial "[a]ll the State needed to do was communicate with the warden of the institution where appellant was incarcerated to obtain the appropriate certificate." *Id.* at ¶ 52.

> The State cannot avoid the application of R.C. 2941.401 by neglecting to inform the custodial warden or superintendent of the source and content of an untried indictment when the State is aware of the defendant's location and the source and content of the untried indictment and the defendant has made a demand for speedy disposition of the same.

*Id.*[7]

{¶23} A case from the Eighth District Court of Appeals dealt with facts almost identical to the case at issue. In *State v. Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, 945 N.E.2d 1070 (8th Dist.), an inmate "sent notice to the trial court of his availability and requested that the criminal case move forward." *Id.* at

---

[7] The Ohio Supreme Court remanded the case with instructions to review it under IAD "[b]ecause appellee was incarcerated in a federal prison in Ohio rather than in a 'correctional institution of this state.' " *State v. Centafanti*, 120 Ohio St.3d 275, 2008-Ohio-6102, 898 N.E.2d 45. The relevant reasoning of the court of appeals was not criticized.

¶ 2. The statutorily required notice was not sent to the warden or superintendent charged with the inmate's custody. *Id.* at ¶ 12. No certificate of the warden was attached either, although the inmate "included his federal prison identification number, his home federal prison institution in Kentucky, and a certificate of service indicating that the notice was also sent to the prosecutor." *Id.* at ¶ 2. The Court of Appeals determined that the inmate "provided enough information to invoke the IAD and the right to be brought to trial within 180 days." *Id.* at ¶ 15. It affirmed the trial court's dismissal for violation of the inmate's speedy trial rights, even though the trial court improperly relied on R.C. 2941.401 instead of the IAD in its action. *See also State v. Levy*, 8th Dist. Cuyahoga No. 83114, 2004-Ohio-4489, ¶ 34 ("Levy would be in substantial compliance had he filed with both the court and the prosecutor."); *State v. Pierce*, 8th Dist. Cuyahoga No. 79376, 2002 WL 337727 (reaching the same result where the state argued that the speedy trial provisions of IAD "were never triggered" because the "notice by defendant's counsel to the court and prosecution" did not constitute "the prisoner's request" under the statute).

{¶24} The Ohio Supreme Court has not addressed the exact facts with which we are faced in this case, where an incarcerated defendant requests speedy trial under R.C. 2941.401 by causing the request to be delivered to the prosecutor and the court, but not the warden. But the court's existing opinions suggest that

compliance would be found on these facts.  In *Hairston*, the Ohio Supreme Court was again asked to determine when the state's duty to act starts under R.C. 2941.401.  101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 20.  The court rejected the defendant's argument that R.C. 2941.401 requires the state to locate an incarcerated defendant and bring him to trial.  *Id.* at ¶ 20.  It held that the state's duty to bring the incarcerated defendant to trial within 180 days begins when the defendant " 'cause[s] to be delivered to the prosecuting attorney and the appropriate court * * * written notice of the place of his imprisonment and a request for final disposition to be made of the matter.' "  *Id.* at ¶ 26, quoting R.C. 2941.401.  In that case, the incarcerated defendant did not provide any such notice to the prosecuting attorney or the court, and thus, he "never triggered the process to cause him to be brought to trial within 180 days of his notice and request."  *Id.* at ¶ 21.  We note that *Hairston* was not a case concerning substantial compliance with R.C. 2941.401.  Therefore, we do not read it as determinative on the issue of whether *sole* delivery to the prosecution and the appropriate court satisfies substantial compliance standard.  Its holding is instructive, however.

{¶25} In *Daugherty v. Solicitor for Highland Cty.*, 25 Ohio St.2d 192, 267 N.E.2d 431 (1971), an inmate submitted letters "to the prosecuting authorities and the Common Pleas Judge," requesting "either a trial or dismissal of the charge for lack of prosecution."  *Id.* at 192.  The prosecution argued that "no proper demand

for speedy trial has ever been made." *Id.* The Ohio Supreme Court found that the inmate "has made a diligent, good-faith effort to call to the attention of the proper authorities in another state that he desires a charge pending against him in that state disposed of, by trial or dismissal." *Id.* Therefore, "he was entitled to have such request acted upon. The failure of the authorities to do so constitute[d] the denial of a speedy trial." *Id.* We note that the *Daugherty* opinion did not mention any statute upon which the prisoner's request for speedy trial was based.[8] Yet, the facts of that case, the issues addressed in the opinion, and the reasoning, confirm the Ohio Supreme Court's position that the burden on an imprisoned criminal defendant is low when it comes to informing the state that he wishes to exercise his constitutional right to a speedy trial. Finally, in *Mourey*, the Ohio Supreme Court recognized that the statute places a twofold burden on criminal defendant, but found substantial compliance upon satisfaction of one element only.[9] *Mourey*, 64 Ohio St.3d 482, 597 N.E.2d 101.

{¶26} We acknowledge the conflict between the mandatory language of R.C. 2941.401 and the above summary of Ohio case law. The language of R.C. 2941.401 seems to require at least three procedures that "shall" be followed to invoke the imprisoned defendant's speedy trial rights: (1) notice of the place of

---

[8] The inmate's letters requesting speedy trial or dismissal were written in 1964, before the enactment of the Ohio IAD, in 1969. *See* R.C. 2963.30, 1969 S 356, eff. 11-18-69.
[9] Although, as stated above, part of this holding has been effectively overruled in *Fex*, 507 U.S. at 52, the remainder of *Mourey* reasoning continues to be governing law in Ohio.

imprisonment and a request for final disposition to the prosecuting attorney and the appropriate court; (2) a certificate of the warden or superintended who has custody of the prisoner, attached to the request, containing specific information about the prisoner; and (3) service of the notice and the request on the warden or superintended having custody of the prisoner.  Conversely, the cases cited above require only that the first requirement be satisfied, directly or indirectly.

**{¶27}** Several courts in Ohio refused to so significantly lower requirements of the statute.  For instance, in *State v. York*, an inmate sent a letter to the clerk of courts "requesting 'information as to what [he] must do to have [the] detainer disposed of.' "  66 Ohio App.3d 149, 151, 583 N.E.2d 1046 (12th Dist.1990).  The clerk forwarded the letter to the trial court, who in turn forwarded it to the appropriate prosecutor.  *Id.*  Because "no notice of the alleged request was given to prison officials * * * [,] the alleged request was not accompanied by a certificate of inmate status."  *Id.* at 153-154.  The Twelfth District Court of Appeals held that "[n]otice to the prison officials and the certificate of inmate status are indispensable and essential to effectuate the purposes of the I.A.D."  *Id.* at 154. We note that *York* was decided prior to the Ohio Supreme Court's decision in *Mourey*, where the court held that substantial compliance requires the defendant to do "everything reasonably required of him that was within his control" and did not find the certificate of inmate status to be indispensable and essential for

compliance with the IAD.[10]  *Mourey*, 64 Ohio St.3d at 487, 597 N.E.2d 101.  The *York* holding was subsequently cited with approval by the Sixth District Court of Appeals in *State v. Denniss*, 6th Dist. Lucas No. L-06-1361, 2009-Ohio-3498.  *See also State v. Schnitzler*, 12th Dist. Clermont No. CA98-01-008, 1998 WL 729250, *4 (Oct. 19, 1998) (holding that the prisoner did not substantially comply with IAD where he failed to deliver his request to prison officials and to attach "the certification and the information from prison officials specified in Article III(a)").

{¶28} The Twelfth and Sixth districts focused on the requirement that the inmate files his or her request with the officials "having custody of him."  *See* R.C. 2941.401 and 2963.30.  Yet, it appears that the Ohio Supreme Court did not intend to create such a distinction for finding substantial compliance when it held that the state's duty to bring the incarcerated defendant to trial within 180 days begins when the defendant " 'cause[s] to be delivered to the prosecuting attorney and the appropriate court * * * written notice of the place of his imprisonment and a request for final disposition to be made of the matter.' "  *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 26, quoting R.C. 2941.401.

{¶29} Although we recognize the position taken by the courts in the Twelfth and the Sixth districts, and the mandatory language of R.C. 2941.401, the Ohio Supreme Court has held that once the prosecuting attorney and the

---

[10] The *Mourey* dissenters noted the requirement of the certificate, which provides "vital" information to the prosecuting attorney.  *Mourey* at 489 (Resnick, J., Moyer, C.J., and Holmes, J., dissenting).

appropriate court are notified of the inmate's request for speedy trial, the state must act. *Hairston* at ¶ 26; *Daugherty*, 25 Ohio St.2d 192, 267 N.E.2d 431; *see also Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036; *Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, 945 N.E.2d 1070; *Pierce*, 8th Dist. Cuyahoga No. 79376, 2002 WL 337727; *Levy*, 8th Dist. Cuyahoga No. 83114, 2004-Ohio-4489. We feel bound by the Ohio Supreme Court's interpretation of the statute. Therefore, we apply it to the case at hand.

*Compliance of Moore's Request for*
*Speedy Trial with R.C. 2941.401*

**{¶30}** As we have previously stated, under the express language of R.C. 2941.401, three procedures are required: (1) delivery of the notice of the place of imprisonment and a request for final disposition to the prosecuting attorney and the appropriate court; (2) attachment to the request of the warden or superintendent's certificate, containing specific information about the prisoner; and (3) service of the notice and the request on the warden or superintendent having custody of the prisoner.

**{¶31}** With respect to the first requirement, Moore filed his request for speedy trial on January 23, 2013. Although this request was not initially served on the proper prosecuting attorney, the State's response on March 27, 2013, proves that the notice and the request were "cause[d] to be delivered" to it by this date, at the latest. *See* R.C. 2941.401; *see also Centafanti*, 5th Dist. Stark No. 2007-CA-

00044, 2007-Ohio-4036, ¶ 41 ("it is clear that, although appellant did not strictly follow that path, the required information arrived at the proper place"); *Ferguson*, 41 Ohio App.3d 306, 311, 535 N.E.2d 708 (holding that the prosecutor's "actual receipt of the request * * * effectively cured the mistake of mismailing the request to the wrong Ohio official"). Thus, Moore fully complied with the first requirement of the statute. According to the law delineated above, this, alone, is sufficient to satisfy the substantial compliance standard. Continuing our analysis, however, we find substantial compliance in this case because there are additional facts present in this case.

{¶32} With respect to the second statutory requirement, although Moore's request was not accompanied by the necessary warden's certificate, Moore attached a printout of the "Offender Search" page from the Ohio Department of Rehabilitation and Correction website with information concerning his status at Southeastern Correctional Institution. While the printout was not authenticated or notarized, it did list "the term of commitment under which [Moore was] being held," the admission date and the expiration of his stated term, as are required to be listed on the certificate under R.C. 2941.401 as "the time served and remaining to be served on the sentence." The printout did not include "the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the

adult parole authority relating to the prisoner," which are also required to appear on the certificate. R.C. 2941.401.

**{¶33}** The dissenting justices in *Mourey* noted that the certificate was important because the information contained within it "is vital, and it may be difficult for the prosecuting attorney to make an informed decision on whether to prosecute the prisoner on the pending charges without receipt of a *completed* certificate of the official having custody of the prisoner." (Emphasis sic.) *Mourey*, 64 Ohio St.3d at 489-490, 597 N.E.2d 101 (Resnick, J., Moyer, C.J., and Holmes, J., dissenting). In this case, Moore provided much of this "vital" information to the prosecuting attorney in his case. Additionally, the decision to prosecute had already been made, as charges in all cases relevant to this appeal had actually been filed before his incarceration in an unrelated case. Therefore, the concern raised by lack of the certificate by the dissenters in *Mourey* is not as significant in this case. *See Pierce*, 8th Dist. Cuyahoga No. 79376, 2002 WL 337727, *3, fn. 2 (citing the *Mourey* dissent and explaining that "the certificate does not have the same function when a case is already in court and is proceeding to trial").

**{¶34}** With respect to the third statutory requirement, although no evidence was provided that Moore had given his notice and request "to the warden or superintendent having custody of him," he argued in the trial court that he "did what he was required to do" and that he "can't be held liable for the warden not

- 25 -

doing what they're required to do." (Tr. at 5:9-15.) We agree that it would be improper to hold Moore responsible for the warden's inaction. *See Mourey* at 487 (holding that the prisoner should not be held "accountable for measures and duties that are totally beyond his or her control"). But Moore offered no testimony or evidence in the trial court to support his suggestion that he had contacted the warden with a request. Therefore, we are unable to determine whether this element of R.C. 2941.401 was satisfied. At the same time, we see no prejudice to the State resulting from Moore's failure to prove that the warden of the Southeastern Correctional Institution received his notice and request for final disposition. The State was served with the notice and the request, and it was aware of Moore's status in the facility. *See Centafanti*, 5th Dist. Stark No. 2007-CA-00044, 2007-Ohio-4036, ¶ 41 ("For appellant to have strictly followed the R.C. 2941.401 requirements, he should have given his written notice to the prison authorities, who should have forwarded it to the prosecutor and court along with a certificate of inmate status. However, it is clear that, although appellant did not strictly follow that path, the required information arrived at the proper place."); *see also Antos*, 8th Dist. Cuyahoga No. 88091, 2007-Ohio-415, at ¶ 10 (holding the same); *Gill*, 8th Dist. Cuyahoga No. 82742, 2004-Ohio-1245, at ¶ 10 ("An inmate's 'notification of availability and request for final disposition' can take several forms, depending on the circumstances of the inmate. Inmates are

sometimes in halfway houses or municipal jail facilities where a warden or superintendent may or may not be present as contemplated in R.C. 2941.401. At times, inmates take it upon themselves to notify the court and prosecutor directly, outside the prescribed method in R.C. 2941.401. * * * Even where the prescribed method is used, variations in notification still occur.").

{¶35} Based on the review of the Ohio law and our analysis of the statute and the facts of this case, we hold that Moore substantially complied with R.C. 2941.401. But because his motion was not initially served upon the proper prosecutor and the appropriate court, we cannot use the date of filing, January 23, 2013, as the date when the 180-day period begins to run. Although the record does not disclose when Moore's request was delivered to the State, it is apparent that the State received the request by March 27, 2013, at the latest, because that is when the State responded to Moore's motion. According to the Ohio Supreme Court's mandate, the delivery to the prosecuting attorney and the appropriate court triggers the state's duty. *See Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 26. Thus, March 27, 2013, was the date from which the 180-day period began to run. Moore's trial did not start within the next 180-days, and no continuances "for good cause shown in open court, with the prisoner or his counsel present" were granted. *See* R.C. 2941.401. Therefore, Moore's speedy

trial rights were violated and the trial court should have granted his motion to dismiss.

**{¶36}** For the foregoing reasons, Moore's assignment of error is sustained.

*Conclusion*

**{¶37}** Having reviewed the arguments, the briefs, and the record in this case, we find error prejudicial to Appellant in the particulars assigned and argued. The judgments of the Marysville Municipal Court of Union County, Ohio are therefore reversed.

***Judgments Reversed***

**ROGERS, J., concurs.**

**PRESTON, J., dissents.**

**/jlr**